UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LIONEL GIBSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:21-cv-02742-JMS-CSW |
| | ) |
| STEVEN DONALDSON, | ) |
| JACK HENDRIX, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Lionel Gibson filed this lawsuit under 42 U.S.C. § 1983 alleging that Defendants Steven Donaldson and Jack Hendrix failed to protect him from an attack by other inmates.[1]

Defendants have moved for summary judgment. Dkt. [92]. For the reasons below, that motion is **GRANTED**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need

---

[1] Claims against defendant Robbie Marshall were dismissed upon Mr. Gibson's motion. Dkts. 83, 85.

not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Gibson and draws all reasonable inferences in his favor.[2] *Khungar*, 985 F.3d at 572–73.

### A. The Parties

At all relevant times, Mr. Gibson was an inmate incarcerated with the Indiana Department of Correction ("IDOC"). Dkt. 94-2 at 6−7 (Gibson Dep.). Mr. Gibson used to be affiliated with the Gangster Disciples. *Id.* at 38; dkt. 96-1 at 1 (Investigative Report).

---

[2] Mr. Gibson is represented by counsel. In the response brief opposing Defendants' motion for summary judgment, Mr. Gibson cites to exhibits but almost always fails to cite to a specific page or paragraph number, as required by the Court's local rules. S.D. Ind. L.R. 56-1(e), (h). While the Court may cite to one of these exhibits if it's easily searchable (e.g. a 2-page email), it will not sift through dozens of pages of records to find the relevant information (e.g. dkt. 95-2, 60-page Case Notes document). *See Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) ("'Judges are not like pigs, hunting for truffles buried in' the record.") (quoting *United States v. Dunkel*, 927 F.3d 955, 956 (7th Cir. 1991)).

2

Defendant Jack Hendrix is the Executive Director of Classification, a position he has held since 2011. Dkt. 95-10 at 3 (8−9) (Hendrix Dep.).[3]

Defendant Steven Donaldson has worked at Wabash Valley Correctional Facility ("Wabash Valley") for 18 years in the roles of correctional officer, unit team counselor, and a shift supervisor. Dkt. 94-1 at 5−6 (Donaldson Dep.). He was a shift supervisor at Wabash Valley but was not a member of the Office of Investigation or Intelligence ("OII") at any time relevant to the incidents in Mr. Gibson's complaint. *Id.* Mr. Donaldson has not visited another IDOC facility in about fifteen years, and he does not provide information about inmates to other facilities. *Id.* at 52.

### B.  Mr. Gibson's Work as a Confidential Informant at Wabash Valley

Although the incident relevant to this lawsuit occurred in 2019, the Court must first describe Mr. Gibson's background as a confidential informant and his previous transfers.

In 2013, Mr. Gibson began working as a confidential informant while housed at Wabash Valley. Dkt. 94-3 at 1−2 (Dec. 11, 2019, Investigation Report); dkt. 96-1 at 1 (Nov. 21, 2019, memo). At some point, correspondence from IDOC employee Robbie Marshall that was meant to go to Mr. Gibson was delivered to other inmates, which exposed Mr. Gibson as a confidential informant. Dkt. 95-3 (Marshall, Oct. 3, 2013, email). This information was obtained by inmates William O'Brien and Calvin Lyons, both of whom were known gang members, and they began to circulate the information. Dkt. 95-6 (September 2013 email); dkt. 95-7 at 1 (Grievance).

### C.  Mr. Gibson's Transfers (2014 – 2016)

In March 2014, Mr. Gibson was transferred to Westville Correctional Facility ("Westville") due to safety concerns stemming from the release of this confidential information. Dkt. 95-5 at 1

---

[3] For depositions that have four pages per one page of the PDF document, the Court first cites to the page or pages of the PDF, followed by the deposition pages in parentheses.

(March 2014 Emails). Mr. Hendrix was placed on notice of these safety issues through email communications, though nowhere in the email chain were inmates Lyons and O'Brien mentioned by name. *Id.* at 1−2. The email stated the following about the release of the confidential information:

> Several months ago, correspondence between IA and offender Gibson ended up in the wrong offender's hands. Gibson was assisting IA with confidential matters, as his information was inadvertently given to another inmate. Offender Gibson claims Counselor Steve Donaldson intentionally gave the other offender Gibson's confidential information. Upon investigating, it was determined that confidential information was mishandled, and other inmates were in possession [of] this information. However, it was not substantiated that Counselor Donaldson intentionally did this.
>
> Regardless, offender Gibson claimed that his safety had been compromised at Wabash Valley, as he requested a facility transfer. Based on our received intelligence, we felt this was in his and the facilities [*sic*] best interest to transfer him.

*Id.* Mr. Gibson was subsequently transferred to New Castle Correctional Facility where he was attacked by two inmates in January 2016 due to the confidential documents circulated by Mr. O'Brien. Dkt. 95-8 at 8 (Entry Discussing Motion for Summary Judgment).

### D.  Mr. Gibson's Lawsuit

On September 16, 2015, Mr. Gibson filed a lawsuit against Mr. Donaldson, Mr. Marshall, and IDOC employee Richard Brown alleging that they failed to protect him in violation of the Eighth Amendment regarding the distribution of confidential information. *Gibson v. Donaldson*, No. 1:15-cv-01465-WTL-MPB, (S.D. Ind. Feb. 6, 2018), dkt. 95-8 ("Case No. 1:15-1465").

While his lawsuit was pending, Mr. Gibson was transferred to Miami Correctional Facility in June 2016 ("Miami"). Dkt. 94-2 at 9; dkt. 1 at 5 (Complaint).

Ultimately, the claims against Mr. Marshall and Mr. Donaldson in Case No. 1:15-1465 were resolved via a settlement agreement. Dkt. 95-8; dkt. 94-10 (Settlement Agreement). The December 2018 settlement agreement included the provision that IDOC would consider housing

Mr. Gibson in an honor dormitory. Dkt. 94-10 at 2. Mr. Hendrix does not recall being involved in the housing decision as part of the settlement agreement, and he would have had no role in placing Mr. Gibson in an honor dormitory, because such a decision is made by the warden or other staff at the facility where the inmate is housed. Dkt. 95-10 at 7 (25), 18–19 (67–70). Mr. Donaldson only learned about the settlement agreement in Case No. 1:15-1465 in 2023 when he asked his attorney about it during discussions about the instant lawsuit because he "hadn't heard anything about it." Dkt. 94-1 at 12.

### E. Other Inmates' Transfer to Miami and November 2019 Attack

In January 2019, IDOC employees discussed the transfer options for inmate J.B. Whitelow and noted that Mr. Whitelow would attempt to retaliate against those who told on him for possession of a cell phone. Dkt. 96-3 at 1. Mr. Gibson is not mentioned in this email, and neither Defendant was part of the email chain.[4] *Id.* On May 31, 2019, Mr. Whitelow was transferred to general population at Miami. Dkt. 96-4 at 3. Mr. Whitelow was transferred at the direction of OII, and, although the transfer authority document was signed by Mr. Hendrix, dkt. 96-4 at 3, the transfer paperwork discussing the reasons for his transfer was signed by nonparties, dkt. 94-7. On July 2, 2019, Mr. Lyons was transferred to Miami. Dkt. 96-4 at 2. On October 2, 2019, Mr. O'Brien was transferred to Miami. *Id.* at 1.

On November 14, 2019, Mr. Gibson's cellmate spoke with a Miami correctional staff member and then returned to their shared cell and warned Mr. Gibson that his life was in danger. Dkt. 94-2 at 16. Later that day, a group of inmates attacked another inmate named Lawrence Davis in a nearby cell. *Id.* at 17. After the assault, Mr. Davis told Mr. Gibson that he was the one who reported to staff that Mr. Gibson's life was in danger. *Id.*

---

[4] Indeed, Defendants have not cited to record evidence showing that Mr. Gibson was the individual who reported Mr. Whitelow's cellphone.

The next morning, Mr. Gibson went to an administrative office and told his counselor and caseworker about his history as a confidential informant. *Id.* at 17−18. He also told them that he had learned that Mr. O'Brien and Mr. Lyons were now at Miami, and they were planning to attack him. *Id.* at 18. The unit team discussed safety measures with Mr. Gibson. *Id.* They offered to place Mr. Gibson in restricted housing, but he did not want to go there because he was taking college classes and knew he wouldn't be able to continue his coursework in that unit. *Id.* at 18−19. Staff assured Mr. Gibson that they were beginning the process of having him transferred but that he should "just be cool, be normal" until the transfer occurred. *Id.* at 19.

Later that day, a group of inmates, including Mr. O'Brien, Mr. Lyons, and Mr. Whitelow, "ambushed" Mr. Gibson and stabbed him. *Id.*; dkt. 96-1. After Mr. Gibson received medical attention, he went to the Internal Affairs department where he reported his suspicion that the IDOC staff members that he had previously sued had intentionally transferred Mr. O'Brien and Mr. Lyons to Miami to hurt him. Dkt. 94-2 at 20.

Following the November 2019 attack, Mr. Gibson is now in statewide protective custody. Dkt. 94-3 at 2.

**F.  Relevant Facts about Defendants' Involvement in Transfers**

Mr. Gibson last spoke with Mr. Donaldson in 2013, before his transfer out of Wabash Valley. *Id.* at 40. Mr. Donaldson is not involved in transfer paperwork. Dkt. 94-1 at 16. Mr. Donaldson did not learn about Mr. Gibson's November 2019 assault until 2023, as part of this litigation. He had no recollection of Mr. Gibson's participation as a confidential informant at Wabash Valley, nor did he remember that there was an investigation when Mr. Gibson's identity as an informant was divulged. *Id.* at 22−23. Matters related to confidential informants are left to the classification department and internal affairs. *Id.* Mr. Donaldson is unaware of what protocols

exist to ensure specific inmates who have conflicts with one another are not transferred to the same facility, as that was not his role in his job duties. *Id.* at 23. Mr. Donaldson testified that he did not share any information about Mr. Gibson to other inmates or Mr. Hendrix. *Id.* at 11−13.

Mr. Gibson has not met or spoken with Mr. Hendrix, but he has sent him letters about classification issues. Dkt. 94-2 at 40. Mr. Hendrix was familiar with Mr. Gibson, but he could not independently recall that he was a confidential informant. Dkt. 95-10 at 3 (9). He has no independent recollection of the reasons for the transfers of inmates Gibson, Lyons, O'Brien, or Whitelow, nor did he know about their gang membership. *Id.* at 6 (19−21).

Mr. Hendrix explained the transfer process as follows. Usually, a transfer would be initiated by a staff member at the facility where the inmate was located. *Id.* at 4 (13). Once the initial paperwork was completed, it would be forwarded to the classification division. *Id.* Then, if the recommendation by the facility was determined to be appropriate, it would be approved and then the transfer would be scheduled. *Id.* When the transfer was based on an individual being a confidential informant, someone in the Office of Internal Affairs at the facility would list that as a reason in the transfer paperwork but "they do not get into the details of that." *Id.* at 5 (14). If an inmate is designated as a member of a security threat group, the Office of Internal Affairs would designate him as such, and that would be part of his record. *Id.* at 6 (21). There are "thousands" of inmates who are affiliated with a security threat group, and Mr. Hendrix would weigh whether an inmate was a known member of a security threat group when considering a proper facility. *Id.* at 7 (22). If an inmate assaulted another inmate, someone at the inmates' facility would be responsible for sharing information with Mr. Hendrix to ensure neither of the inmates were transferred to the same facility. *Id.* at 15 (55−56). Mr. Hendrix is not made aware of every investigation regarding a safety issue due to the sheer enormity of such investigations. *Id.* at 15 (57) ("I'm not privy to the

countless investigations that go on agency wide. We have 18 adult facilities, four juvenile facilities, 26,000 individuals, not to mention investigations with staff. So again, unless it is something that I need to be aware of through a business practice or something that personally involves me, I'm not made aware of those.").

## III.
## Discussion

Mr. Gibson raises an Eighth Amendment failure-to-protect claim and state-law negligence and breach-of-contract claims against Defendants.

### A. Eighth Amendment Failure-to-Protect Claim

Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To prevail on a failure to protect claim, the plaintiff must prove (1) that he was at a substantial risk of serious harm that ultimately occurred, and (2) that the defendant was subjectively aware that he was at a substantial risk of harm and failed to make reasonable efforts to protect the plaintiff from this substantial risk. *Id.* at 832−34; *see also Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (noting a defendant incurs liability for the breach of the duty to protect when he was "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)).

Certainly, Mr. Gibson's identity as a former gang member who became a confidential informant at a prison subjected him to a risk of harm. This case depends on the subjective prong of the deliberate indifference analysis: whether Defendants were aware of this risk and failed to take appropriate steps to protect him when making the classification and transfer decisions.

With respect to Mr. Donaldson, there is no evidence that he had any personal involvement in the transfers of Mr. Gibson or his attackers to Miami. "Individual liability under § 1983 …

8

requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). Mr. Gibson speculates that Mr. Donaldson was responsible for the other inmates' transfers to Miami, but he has failed to adduce any evidence to support this suspicion. *See White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (non-movant receives the "benefit of reasonable inferences from the evidence, but not speculative inferences in his favor" (cleaned up)). Mr. Donaldson is thus entitled to summary judgment.

Due to his role as Executive Director of Classification, Mr. Hendrix was involved in these inmates' transfers. But there is no evidence that he was aware of the relationship between Mr. Gibson and the inmates who attacked him. "In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Gidarisingh v. Pollard*, 571 F. App'x 467, 470 (7th Cir. 2014) (quoting *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996)); *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020) ("[T]he prison official must have actual, not merely constructive, knowledge of the risk to be liable."). The March 2014 email that resulted in Mr. Gibson's transfer out of Wabash Valley did not mention inmates O'Brien, Lyons, or Whitelow[5] by name. Dkt. 95-5 at 1−2. Nor did the transfer paperwork about those inmates mention Mr. Gibson. Dkts. 94-4, 94-5, 94-6, 94-7, and 94-8. A September 2013 email from dismissed defendant Mr. Marshall about Mr. Gibson's safety *did* mention Mr. Lyons, but Defendants were not on this particular email chain. Dkt. 95-6. Mr. Hendrix testified that it is "helpful" when prison officials at the facilities advise him of conflicts among inmates to inform his transfer decisions, but he noted that he is not apprised of every investigation regarding inmate conflicts due to the sheer number. Dkt. 95-10 at 15 (55−57).

---

[5] Again, it is not clear from the evidence cited by the parties that Mr. Whitelow was involved in the events at Wabash Valley in 2014.

Mr. Gibson retained Lenard Vare to provide expert testimony about the classification issues underlying this lawsuit. Dkt. 95-12 (Vare Initial Report), dkt. 95-13 (Vare Supplemental Report). Mr. Vare has over 26 years of experience working in jails and prisons and has worked at all levels of inmate classifications. Dkt. 95-12 at 1−2. He opined that Mr. Gibson's classification and case notes reflected that he was "attacked on numerous instances due to his involvement as a confidential informant for the Internal Affairs office[.] . . .This knowledge and information should have made it foreseeable for prison staff to place [Plaintiff] in a location where he was safe and kept away from other gang members." *Id.* at 33−34. This opinion reflects that there may have been systemic problems in IDOC's classification and transfer systems that resulted in Mr. Lyons, Mr. O'Brien, and Mr. Whitelow being placed in the same facility as Mr. Gibson five years after the initial leak of information at Wabash Valley. But this is not a case about IDOC's practices and policies. It does not change the fact that there is no evidence showing Mr. Donaldson or Mr. Hendrix had *actual* knowledge of the risk to Mr. Gibson. Like Mr. Donaldson, Mr. Hendrix is entitled to summary judgment.

The Court need not address Defendants' alternative claim that they are entitled to summary judgment.

### B.  State-Law Claims

Because Mr. Gibson's constitutional claims are being dismissed, the Court has discretion whether to exercise supplemental jurisdiction over his remaining state-law claims. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it

10

had original jurisdiction is entirely discretionary."). "Indeed, when the federal claims are dismissed before trial, *there is a presumption* that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (emphasis added).

When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (internal quotation marks and quoted authority omitted).

In the Seventh Circuit, "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Sharp Elecs. v. Metropolitan Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (internal quotation marks and quoted authority omitted). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) (internal quotation marks and quoted authority).

No circumstance in this case overcomes the presumption that the Court should relinquish jurisdiction over Mr. Gibson's state-law claims.

The statute of limitations is not a factor. Both federal and state law toll the relevant limitation period when claims are pending in a civil action (except in limited circumstances not

11

present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998).

The Court has not expended significant resources on the pending state-law claims. The Court does not expect that the parties' discovery and briefing efforts with respect to the state law claims will go to waste. Rather, the evidence and legal research they have uncovered should be every bit as relevant in a state-court proceeding.

Further, it is not absolutely clear how the state-law claims should be resolved. Although Defendants argue that they are entitled to immunity for Mr. Gibson's state-law claims, exceptions to that immunity exist, and the Indiana courts are better suited to resolve the question as to whether they apply in this case.

Finally, comity always favors allowing state courts to decide issues of state law.

Having resolved all claims within its original jurisdiction, the Court exercises its discretion and relinquishes supplemental jurisdiction over Mr. Gibson's state-law claims.

## IV.
## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**. Dkt. [92]. Final judgment will issue in a separate entry.

**IT IS SO ORDERED.**

Date: 8/9/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel